UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

**ANTHONY MARANO COMPANY,**

**Plaintiff,**

**v.**

**MS-GRAND BRIDGEVIEW, INC., d/b/a MELROSE FRESH MARKET, an Illinois corporation, PETER LIMPERIS, and MAKIS LIMPERIS,**

**Defendants.**

Case No.

**Judge:**

**Magistrate Judge:**

`FILED: JULY 25, 2008`
`08CV4244`

`JUDGE ZAGEL`
`MAGISTRATE JUDGE BROWN`

`AEE`

**MEMORANDUM IN SUPPORT OF PLAINTIFFS MOTION FOR TEMPORARY RESTRAINING ORDER AND PACA TRUST CLAIM**

Plaintiff, ANTHONY MARANO COMPANY, respectfully requests that this Court issue a Temporary Restraining Order and Preliminary Injunction requiring Defendants to preserve and maintain trust assets, and prevent any further dissipation of trust assets, all in favor of Plaintiff, a qualified and unpaid PACA trust beneficiary.

**I. FACTS**

Plaintiff, an unpaid supplier of perishable agricultural commodities, seeks declaratory relief under, and specific enforcement of the statutory trust set forth in, the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §499e(c) and the regulations issued pursuant thereto, 7 C.F.R. Part 46, (the "PACA" regulations"). In addition, Plaintiff requests entry of an Order to preserve the trust res.

Plaintiff is engaged in the sale of perishable agricultural commodities to merchants and dealers. Between April 16, 2008 and July 23, 2008, Defendant, M-S GRAND BRIDGEVIEW,

1

INC., an Illinois corporation (hereinafter "M-S Grand"), PETER LIMPERIS, and MAKIS

LIMPERIS purchased, in interstate commerce, perishable agricultural commodities on account

from Plaintiff in the amount of $959,227.68. Terms agreed upon between the parties called for

payment in full within 10 days from the date of acceptance. Defendants owe ANTHONY

MARANO COMPANY $959,227.68 for their produce purchases. M-S Grand, is currently in

default on the full amount. Plaintiff has on its invoices to M-S Grand, notices of its intent to

preserve the benefits of the statutory trust arising under §5(c) of the PACA, 7 U.S.C. §499e(c).

(See Exhibit 1 to Complaint).

Defendants, M-S Grand, are well aware of Plaintiff's status as a trust beneficiary. As a

PACA trust beneficiary, Plaintiff has a super priority to payment, and the least, is entitled to

share pro rata from the PACA trust res should there be any other trust beneficiaries.

M-S Grand. is now more than $959,227.68 in arrears on its obligation to ANTHONY

MARANO COMPANY for the produce purchase. It now appears likely that without Court

intervention Plaintiff may never receive payment on any of this produce. The facts indicate a

significant likelihood that the trust has been compromised. If the trust has been dissipated

Plaintiff stands to lose significantly more money which could jeopardize its relationship with its

suppliers. Id. at ¶5.

Plaintiff requests the entry of a Temporary Restraining Order for the purpose of

preventing M-S Grand from taking any action to dispose of or otherwise disburse the property

and assets which are subject to the statutory trust created by the PACA, including those monies

and/or property received from or resulting from current sales or receivables. The failure of M-S

Grand to pay promptly for commodities bought from Plaintiff causes substantial damage to the

business of Plaintiff, and endangers the ability of Plaintiff to pay its suppliers (See Affidavit of

Anton Marano in Support of Motion by Plaintiff Anthony Marano Company for Temporary

Restraining Order and PACA Trust Claim at ¶12).  Further, once M-S Grand disburses funds

received it will be virtually impossible to force the third parties to disgorge the funds should this

Court determine that said funds were wrongfully paid to third parties in violation of the PACA.

Under these circumstances, entry of a Temporary Restraining Order and then a Preliminary

Injunction is entirely appropriate.

## II.  LAW AND ARGUMENT

### A.  The Perishable Agricultural Commodities Act

The Perishable Agricultural Commodities Act of 1930, 7 U.S.C. §499a, et. seq.

("PACA") was adopted as a Depression-era regulation of the produce industry.  PACA is an

intentionally rigorous law whose primary purpose is to exercise control over an industry which is

highly competitive, and in which the opportunities for sharp practices, irresponsible conduct and

unfair methods are numerous".  Wayne Cusimano, Inc. v. Block, 692 F.2d 1025, 1028 n.2 (5th

Cir. 1982) (quoting 1956 U.S. Code Cong. & Admin. News 3699, 3701).  "The PACA is a

remedial statute designed to ensure that commerce in agricultural commodities is conducted in an

atmosphere of financial responsibility".  Finer Foods Sales Co. v. Block, 708 F.2d 774, 782 (D.C.

Cir. 1988).  The statute is intended to remedy the "domino effect" caused by the failure to pay for

fresh produce.  "Failure to pay" violations not only adversely affect the party who is not paid for

produce, but such violations have a tendency to snowball.  "On occasions, one licensee fails to

pay another licensee who is then unable to pay a third licensee.  This could have serious

repercussions to producers, licensees and consumers."  In re Columbus Fruit Co., 40 Agric. Dec.

109, 114 (1981), aff'd. mem., 41 Agric. Dec. 89 (D.C. Cir. No. 81-1446, January 19, 1982).

The PACA was amended in 1984 to add a provision for a statutory trust for the benefit of unpaid suppliers of fresh produce. Section 5 of the PACA, 7 U.S.C. §499e, creates a statutory trust for the benefit of unpaid sellers or suppliers of perishable agricultural commodities, the corpus of which consists of the perishable agricultural commodities received, all inventories of food or other products derived from the perishable agricultural commodities received, any receivables or proceeds from the sale of such commodities or products, and any non-produce related assets purchased with trust monies. See In re Atlantic Tropical Market, 118 Bankr. 139 (Bankr. S.D. Fla, 1990). In this regard, Section 5(c), 7 U.S.C. §499e(c), provides, in relevant part:

> (2)   Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.(emphasis added).

As a company engaged in the buying of wholesale quantities of perishable agricultural commodities, M-S GRAND is a "dealer" under the provisions of the PACA and the applicable regulations promulgated by the Secretary of Agriculture. 7 U.S.C. §499a(6); 7 C.F.R. §46.2(m)(l). The mixed fruits and vegetables supplied by Plaintiff to M-S Grand were acquired in interstate commerce and fall within the statutory definition of a "perishable agricultural commodity". 7 U.S.C. §499a(4)(A). Therefore, the transactions between the Plaintiff and M-S Grand which are relevant for the purposes of this Motion are governed by the trust fund

4

provisions of the PACA.

Pursuant to the terms of the statute, the inventory of perishable agricultural commodities held by M-S Grand and the proceeds derived from the sale thereof are impressed with a statutory trust and have been so subject to the statutory trust since delivery of the perishable agricultural commodities.  Under the regulations, the entitlement of the creditors to participate in that statutory trust created by the PACA was automatic upon the transfer of the perishable agricultural commodities to M-S Grand, 7 C.F.R. §46.46(d)(l).

The PACA requires the unpaid supplier or seller to give written notice of intent to preserve the benefits of the trust to the dealer, 7 U.S.C. §499e(c).  The statutory trust is a nonsegregated "floating" trust pursuant to which the commingling of trust assets is contemplated, and all trust assets whether or not commingled are part of the trust <u>corpus</u>.   Accordingly, it is not necessary for creditors to trace specific trust assets.  <u>In re Fresh Approach, Inc.</u>, 51 Bankr. 412 (Bankr. N.D. Tax. 1985).

Most of the reported decisions interpreting the relatively recent statutory provisions of the PACA have been in the context of bankruptcy proceedings, where the opposing interest (generally the Trustee in Bankruptcy or Debtor in Possession) holds the most privileged hypothetical lien status and can assert the numerous Bankruptcy Code provisions which invalidate the claimed superior status of any creditor.  However, even in these instances, the courts have recognized the valid and effective trust beneficiary status of a PACA trust beneficiary and its entitlement to immediate possession of the trust <u>corpus</u>.  <u>See</u>, <u>e.g.</u>, <u>In re Fresh Approach, Inc.</u>, 48 Bankr. 926 (Bankr. W.D. Tax. 1985); <u>In re Prange Foods Corp.</u>, 63 Bankr. 211 (Bankr. W.D. Mich. 1986); <u>In re Anthony Tammaro, Inc.</u>, 56 Bankr. 999 (D. N.J. 1986).

5

In amending the PACA to add the statutory trust provisions, Congress specifically stated its intention to create a statutory trust similar to that then in existence for the benefit of livestock dealers under the Packers and Stockyard Act of 1921, 7 U.S.C. §196; see also H.R. Rep. No. 98-543, 98th Cong., 1st Sess., 4 (1983), reprinted in 1984 U.S. Code Cong. & Ad. News 405, 407. The legislative history accompanying the 1984 PACA amendments supports the position of the debtor.  The House report accompanying the legislation states:

> This legislation would provide a remedy by impressing a trust in favor of the unpaid seller or supplier on the inventories of commodities and products derived therefrom and on the proceeds of sale of such commodities and products in the hands of the commission merchant, dealer or broker in the same manner as has been provided by "trust" amendments to the Packers and Stockyards Act adopted in 1976...  The trust impressed by section 5(c)(2) of this Act is made up of a firm's commodity related liquid assets, and is a nonsegregated "floating" trust, which permits the commingling of trust assets...
>
> ***
>
> The trust impressed by section 5(c)(2) is a nonsegregated "floating trust" made up of all a firm's commodity related liquid assets, under which there may be a commingling of trust assets.  Under this provision there is no necessity to specifically identify all of the trust assets through each step of the accrual and disposal process.  (emphasis added).

1984 U.S. Code Cong. & Admin. New 407, 409.  The view that the trust consists of all produce-related assets, not just those traceable to the PACA claimants, is further supported by the remarks of the Representative introducing the 1984 trust amendments:

> H.R. 3867 impresses a statutory trust on all perishable agricultural commodities received by a buyer and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities for the benefit of the unpaid seller.  (emphasis added).

129 Cong. Rec. H9902 (daily ed. November 15, 1983) (statement of Rep. de la Garza).

Testimony at the congressional hearings on the 1984 trust amendments provides additional evidence that Congress intended the trust to consist of all produce-related assets:

> To protect sellers until full payment is received, this legislation would give sellers a new safeguard by allowing them, under specified conditions, and subject to action by the sellers, to be treated as beneficiaries of a nonsegregated trust <u>consisting of all of the buyer's commodity-related liquid assets</u>.  (emphasis added).

Amendments to the Perishable Agricultural Commodities Act:  Hearings on H.R. 3867 Before

the Subcomm. on Domestic Marketing, Consumer Relations and Nutrition of the House

Committee on Agriculture, 98th Congress, 1st Session at 2 (1983) (hereinafter cited as "Hearing

Transcript") at 2 (statement of Rep. Pinetta).

> As a seller is paid for his goods, the trust would be diminished by that amount.  <u>As new purchases are made and goods come in, they are added as trust assets.  That is why we call it a floating trust.  It varies up and down, and no specific identity of all trust assets is available.</u>  (emphasis added).

Testimony of John Gardner, Chief, PACA Branch, Agricultural Marketing Service, Hearing

Transcript at 19.  The official statement of the Department of Agriculture at the same hearings

also concludes that the trust consists of all commingled commodity-related assets:

> The trust impressed by §5(c)2 is a so-called "floating trust".  As each supplier, seller or agent gives ownership, possession, or control of perishable agricultural commodities to a commission merchant, dealer or broker, such supplier, seller or agent will automatically become a participant in the trust.  Trust participants who file to preserve their right to benefits remain trust beneficiaries until they have received payment in full.  When produce shipments are paid for or trust assets are liquidated, the amount of the trust will be reduced.  <u>Likewise, the receipt of new shipments adds to trust assets</u>.  Trust assets may be commingled with other assets of the receiving business, and may be traced into the resulting constructive trust.  This concept is tailored after that which was upheld in the case of <u>In re Gotham Provision Co., Inc., The First State Bank of Miami v. Gotham Provision Co., Inc.</u>, 669 F.2d 1000 (5th Cir. 1982).  The purpose of the trust is to assure that all business entities along the chain of supply from the producer receive prompt payment for their goods and assurance that they will <u>not be deprived</u> of being paid by the receiver because liens have been placed on the goods or receivables for the benefit of other creditors.  (emphasis added).

Hearing Transcript at 66 (statement of Vern F. Highley, Administrator, Agricultural Marketing

Service, U.S. Department of Agriculture).

7

**B. Plaintiff is Entitled to Injunctive Relief**

The Eleventh Circuit Court of Appeals has held that, under 7 U.S.C. §499e(c)(4), district courts have the authority to issue the type of injunctive relief sought by Plaintiff. See Frio Ice, S.A., v. Sunfruit, Inc., 918 F.2d 154, 157-158 (11th Cir. 1990). Because the legislative history of the PACA neither directly nor inferentially restricts the district courts' jurisdiction to entertain injunctive suits by trust beneficiaries, those courts may exercise fully their traditional equity powers and issue injunctive relief to PACA trust beneficiaries. Frio Ice at 157-158.

Further, the Frio Ice court found that §499e(c) authorizes district courts to order PACA defendants, such as Roselle International, to create segregated trust accounts to enforce payments to trust beneficiaries:

> [The central purpose of §499e(c) is to ensure payment to trust beneficiaries. Segregation often may be the only means by which a federal court can prevent dissipation. H. Rep No. 543, 98th Cong., 2d Sess. 4, reprinted in 1984 U.S. Code Cong. & Admin. News 405, 407. The legislative history noted that once the trust is dissipated it is almost impossible for a beneficiary to obtain recovery. Id. at 411. Congress recognized that dissipation of trust assets would undermine PACA and made such dissipation a violation of the statute. 7 U.S.C.A. §499b(4) (West Supp. 1990). Thus, preventing dissipation of the trust is a key purpose of PACA. Segregation of trust assets is an important tool for achieving that purpose. For these reasons, the district court's finding that it did not have the authority to segregate trust assets is erroneous.

Frio Ice, supra, at 159 (emphasis added).

In the event that trust assets are insufficient to pay the claims of all PACA trust creditors in full, qualified PACA trust creditors are entitled to a pro-rata distribution of the trust fund. In re Milton Poulos, Inc., 107 Bankr. 715 (9th Cir. B.A.P. 1989); J.R. Brooks & Sons, Inc. v. Norman's Country Market, Inc., 98 Bankr. 47 (Bankr. N.D. Fla. 1989); and In re United Fruit & Produce, 86 Bankr. 14 (Bankr. D. Conn. 1988). Anticipating this potential result and the

likelihood that additional PACA trust creditors exist which are not yet parties to the litigation, the <u>Frio Ice</u> court ruled that the trust account should contain <u>all</u> trust assets, not just an amount sufficient to cover the claim of one PACA creditor, as the trust exists for the benefit of all unpaid suppliers, who would then be entitled to their pro-rata share.  <u>Frio Ice</u>, <u>supra</u>, at 159 (emphasis added).

In <u>University of Texas vs. Camenisch</u>, 451 U.S. 390 (1981), the United States Supreme Court described the purpose of preliminary injunctive relief as follows:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.

<u>Id</u>. at 395.  <u>See also</u> <u>Mississippi Power & Light Co. v. United States Pipe Line Gas Co.</u> 760 F.2d 618 (5th Cir. 1985).  In the case at bar, the <u>status quo</u> must be preserved until the court can rule on the merits of the case.

Plaintiff has demonstrated through their Complaint and the testimony set forth in the Affidavit of Anton Marano that it is an unpaid supplier of perishable agricultural commodities to M-S Grand.  M-S Grand has violated the PACA trust provisions and, absent a temporary restraining order, the corpus of the PACA statutory trust will continue to be dissipated.  No legal remedy will be sufficient to compensate Plaintiff if the trust corpus has been entirely depleted. Therefore, Plaintiff seeks a temporary restraining order and then a preliminary injunction to preserve the <u>status quo</u> until such time as the Court can hear this case on the merits and grant effective relief.

## C. Plaintiff Meets the Traditional Requirements for Temporary Restraining Order and Preliminary Injunction.

Plaintiff is entitled to a permanent injunction under the traditional equitable formulations

for determining whether injunctive relief is appropriate.  Under traditional equity jurisprudence, the Court should consider and balance four factors in deciding whether to issue a temporary restraining order:

1.    Whether the plaintiff is likely to succeed on the merits;

2.    Whether the Plaintiff will suffer irreparable injury if the relief is not granted;

3.    Whether the injunction would harm the defendants; and

4.    Whether the public interest would be served by issuing the temporary restraining order.

In re DeLorean Motor Co., 755 F.2d 1223 (6th Cir. 1985); Canal Authority of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).  The test is a flexible one and the factors are not prerequisites to be met, but rather are considerations that must be balanced.  In re DeLorean Motor Co. 755 F.2d 1223.   The degree of likelihood of success on the merits that must be shown decreases as the strength of the showing of the other factors increases and a movant need only demonstrate a "sufficiently serious question" to justify further investigation, and not a strong likelihood of success on the merits.  In re of DeLorean Motor Co. 755 F.2d 1223; see also Friendship Materials, Inc. v. Michigan, Inc., 679 F.2d 100 (6th Cir. 1982).  A balancing of these four factors demonstrates that Plaintiff is entitled to a temporary restraining order.

### 1.  Plaintiff will succeed on the merits.

The facts and evidence before this court demonstrate that there is a substantial likelihood that Plaintiff will prevail on the merits of this case.  Section 5 of the PACA 7 U.S.C. §499e, creates a statutory trust for the benefit of unpaid sellers or suppliers of perishable agricultural commodities, the corpus of which consists of the perishable agricultural commodities

10

received, all inventories of food or other products derived from the perishable agricultural

commodities received, and any receivables or proceeds from the sale of such commodities or

products.  In this regard, Section 5(c), 7 U.S.C. §499e(c)(2), provides in pertinent part as follows:

> (2)    Perishable agricultural commodities received by a commission merchant,
> dealer, or broker in all transactions, and all inventories of food or other
> products derived from perishable agricultural commodities, and any
> receivables or proceeds from the sale of such commodities or products,
> shall be held by such commission merchant, dealer, or broker in trust for
> the benefit of all unpaid suppliers or sellers of such commodities or agents
> involved in the transaction, until full payment of the sums owing in
> connection with such transactions has been received by such unpaid
> suppliers, sellers or agents.

As an entity engaged in the buying of wholesale quantities of perishable agricultural

commodities, M-S Grand was a "dealer" under the provisions of the PACA and the applicable

regulations promulgated by the Secretary of Agriculture.  7 U.S.C. §499a(6); 7 C.F.R.

§46.2(m)(l).  The perishable agricultural commodities supplied by Plaintiff to M-S Grand. were

acquired by M-S Grand. in interstate commerce and fall within the statutory definition of a

"perishable agricultural commodity".  7 U.S.C. §499a(4)(A).  Therefore, the transactions between

Plaintiff and M-S Grand, which are relevant for the purposes of the Motion, are governed by the

trust fund provisions of the PACA, 7 U.S.C. §499e(c).

Pursuant to the terms of the statute, the inventory of perishable agricultural commodities

held by M-S Grand and the proceeds derived from the sale thereof are impressed with a statutory

trust, and have been so subject to the statutory trust since delivery by Plaintiff of perishable

agricultural commodities.  Under the regulations, the entitlement of Plaintiff to participate in the

statutory trust created by the PACA was automatic upon the transfer of the perishable agricultural

commodities to M-S Grand, 7 C.F.R. §46.46(d)(1).

The PACA requires the unpaid supplier or seller to give written notice of intent to preserve the benefits of the trust to the dealer. In the case sub judice, the required notices of intent to preserve trust benefits is evidenced by the exhibits referred to in the Affidavit of ANTON MARANO. The statutory trust is a nonsegregated "floating" trust pursuant to which the commingling of trust assets is contemplated, and all trust assets whether or not commingled are part of the trust corpus. 7 C.F.R. §46.46(c). Accordingly, it is not necessary for Plaintiff to trace specific trust assets in the possession of M-S Grand. In re Fresh Approach, Inc., 51 Bankr. 412 (Bankr. N.D. Tex 1985).

Most of the reported decisions interpreting the relatively recent statutory trust provision of the PACA have been in the context of bankruptcy proceedings, where the opposing interest (generally the Trustee in Bankruptcy or Debtor in Possession) holds the most privileged hypothetical lien status and can assert the numerous Bankruptcy Code provisions which invalidate the claimed superior status of any creditor. However, even in these instances, the courts have recognized the status of a PACA trust beneficiary and its entitlement to immediate possession of the trust corpus. E.g. In re Fresh Approach, Inc., 48 B.R. 926 (Bkrtcy. W. D. Mich. 1985); In re Prange Foods Corp., 63 Bankr. 211 (Bankr. W.D. Mich. 1986); In re Anthony Tammaro, Inc., 56 Bankr. 999 (D. N.J. 1986).

As the evidence before this Court demonstrates, Plaintiff has done all that is necessary to perfect its position as a PACA trust beneficiary, and as such is entitled to specifically enforce those rights against M-S Grand, pursuant to 7 U.S.C. §499e(c)4.

12

**2.Plaintiff is suffering irreparable injury which will continue unless enjoined.**

The purpose of a temporary restraining order is to prevent irreparable injury so as to preserve the court's ability to render meaningful a decision on the merits.  <u>United States v. Alabama</u>, 791 F.2d 1450 (11th Cir. 1986).  Plaintiff is suffering, and has already suffered, irreparable injury as a direct result of M-S Grand's, failure and inability to pay accounts due and maintain the statutory trust.  If M-S Grand is permitted to further dissipate the trust assets, Plaintiff will continue to sustain serious and irreparable harm.

The trust proceeds are necessary and indispensable to Plaintiff's ongoing business.  "Irreparable injury," for purposes of granting a temporary restraining order, is harm which cannot be reasonably redressed in a court of law, what is critical is immediacy of harm rather than its magnitude.  <u>UST, INC. v. United States</u>, 648 F. Supp. 1 (CIT 1986).  Clearly, the harm at issue here is immediate if Plaintiff's business begins to falter as a result of the inability to meet its obligations to its vendors and customers.  This Court cannot restore the loss of long-standing business relationships with creditors, suppliers and customers, nor mend a damaged reputation in the marketplace.

In the absence of preliminary injunctive relief, certain of the PACA trust assets now held by M-S Grand, and which will be forthcoming from collection of its accounts receivable will likely be used by M-S Grand, to satisfy other debts, or will be otherwise dissipated.  If M-S Grand is not required to set aside the trust funds and make an accounting to the Court regarding the current status of the business (accounts receivable, operating expenses, etc.), the corpus of the trust will continue to be dissipated, in <u>direct contravention</u> of the PACA.

**3. The relief sought by Plaintiff does not impose an undue hardship on M-S Grand.**

By placing the funds in trust, M-S GRAND would only be fulfilling its statutory duty as trustee. Requiring fulfillment of such a duty cannot be harmful as a matter of law.

Furthermore, if the Court grants the requested injunctive relief, M-S Grand. will only be required to set aside trust funds in an interest-bearing account pending the outcome of the litigation. M-S Grand will <u>not</u> be required to pay the money to Plaintiff. Hence, in the event this Court should decide that the PACA trust, or portions thereof, are invalid, M-S Grand will not have suffered any hardship by the granting of the temporary restraining order.

**4. The relief sought by Plaintiff benefits the public.**

The public interest must always be considered in evaluating a motion for a temporary restraining order. <u>Glaxo, Inc. v. Heckler</u>, 623 F. Supp. 69 (D.N.C. 1985). Selective enforcement of the PACA trust provisions would create a lingering doubt in the minds of produce suppliers and sellers everywhere while at the same time unjustifiably enriching those unscrupulous parties who do not perform as promised. The trust provisions of the PACA were specifically designed to ensure that suppliers, such as Plaintiff, would be paid promptly. The PACA trust provision specifically declared that its intent is to protect the <u>public interest</u> and to remedy the burden on commerce caused by receivers, such as M-S Grand who did not pay for produce they purchased but, instead, used the proceeds for other purposes. 7 U.S.C. §499e(c)(1).

Third parties with whom Plaintiff has contractual commitments will be harmed if the trust funds are dissipated. The Secretary of Agriculture has addressed the precise situation here in <u>In re Columbus Fruit Co.</u>, 40 Agric. Dec. 109, 114 (1981), <u>aff'd. mem.</u>, 41 Agric. Dec. 89 (D.C. Cir. No. 81-1446, January 19, 1982):

14

> Failure to pay violations not only adversely affects the party who is not paid for produce, but such violations have a tendency to snowball. "On occasions, one licensee fails to pay another licensee." This could have serious repercussions to producers, licensees and consumers.

(quoting In re John H. Norman & Sons Distrib. Co., 37 Agric. Dec. 705, 720 (1978). Therefore, the public interest favors granting a temporary restraining order.

### D.  The Relief Requested by Plaintiff Is Customarily Entered.

Numerous Courts have routinely granted preliminary injunctive relief of the type sought by Plaintiff.  In a case brought by purported PACA trust beneficiaries, the Eleventh Circuit established the standard which must be met in order to obtain preliminary injunctive relief and, specifically, the relief which may be provided should that standard be met.

> Upon a showing that the trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets.  It should then require the PACA debtor to separate and maintain these produce-related assets as the PACA trust for the benefit of all unpaid sellers having a bona fide claim.  7.U.S.C.A. §499e(c)(3).

Frio Ice, supra at 159 (emphasis added).  Plaintiff has met this standard of proof and request precisely the relief identified by the Eleventh Circuit as appropriate under the circumstances.

Numerous federal district courts have issued restraining orders and preliminary injunctions requiring parties such as M-S Grand to set aside PACA trust funds pending final disposition of the case.  The evidence before this Court definitively establishes that unless Plaintiff receives similar immediate relief, the trust res will continue to be dissipated by M-S Grand.

### V. CONCLUSION

Plaintiff is entitled to a temporary restraining order in order to maintain the trust res and

15

ensure that the status quo be  maintained.  Based upon the foregoing, Plaintiff respectfully urges

this Court to grant its Motion for Temporary Restraining Order and, further, order Defendant M-

S Grand to place any and all trust funds, including all monies and receivables of M-S Grand

which are currently in the possession of M-S Grand, into an interest-bearing escrow account in

the court registry, or in the alternative, in a bank, so that the PACA statutory trust will be

preserved during the pendency of this litigation.

Respectfully submitted,

  s/s Michael Stanley
Michael T. Stanley
Ordower & Ordower, P.C.
One N. LaSalle St. #1300
Chicago, IL 60602
(312) 263-5122
Counsel for Plaintiff

C:\Documents and Settings\Michael Stanley\My Documents\M Stanley\Marano\MS-GRAND\AMCvMSGRANDBRIDGETROMEMORANDUM.072508.wpd

16