UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY MARANO COMPANY,

    Plaintiff,

    v.

MS-GRAND BRIDGEVIEW, INC.,
MELROSE FRESH MARKET, PETER
LIMPERIS, and MAKIS LIMPERIS,

    Defendants.

JACK TUCHTEN WHOLESALE
PRODUCE, INC.,

    Intervening Plaintiff,

    v.

MS-GRAND BRIDGEVIEW, INC.,
MELROSE FRESH MARKET, PETER
LIMPERIS, and MAKIS LIMPERIS,

    Defendants.

No. 08 C 4244
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**I. Factual and Procedural Background**

Plaintiff, Anthony Marano Company ("Marano"), and Intervening Plaintiff, Jack Tuchten Wholesale Produce, Inc. ("Tuchten"), are suppliers of agricultural produce to Defendants, who owned and operated a grocery store in Bridgeview, Illinois. Marano commenced this action on July 25, 2008 to enforce payment from the trust established by the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). Marano also moved for entry of a temporary restraining order to prevent dissipation of trust assets, which I granted on August 14,

2008. Marano did not move for the entry of a preliminary injunction. The restraining order was served on Defendants' banking institution on August 21, 2008 by Marano's counsel and independently by Tuchten's counsel on August 26, 2008.

As part of its claim, Tuchten also sought injunctive relief against Defendants to enjoin and restrain them from violating the provisions of PACA and from dissipating PACA trust assets. At a hearing on September 9, 2008, Tuchten agreed to postpone the hearing on the motion for injunctive relief until September 19, 2008 based upon Defendants' representations that a sale of the corporate Defendant (MS-Grand Bridgeview, Inc. ("MS-Grand")), was imminent, and entry of an injunction would impede sale negotiations. Defendants' counsel agreed that MS-Grand would make no payment to any existing creditor, or any other individual or entity, for anything other than current salary or purchase of necessary new grocery stock on a "Cash on Delivery" basis, pending written agreement of all the parties or by further order of the Court.

That agreement to cease payments, with those few exceptions, ended on September 19, 2008 when I entered a preliminary injunction, which ordered that Defendants, their agents, subsidiaries and assigns shall not alienate, dissipate, pay over, or assign any assets of MS-Grand or its subsidiaries, related companies, or assigns, including but not limited to Melrose Fresh Market, Inc., except that it could pay current non-owner wages due through the time and date of the issuance of the preliminary injunction order. I further ordered that Defendants turn over any funds realized from the sale of produce or products derived from produce in its possession to Tuchten's counsel for the benefit of Tuchten and all similarly situated creditors within two business days of the order. Finally, I ordered that all funds of MS-Grand on deposit at banking

institutions be immediately paid over to Tuchten's counsel in trust for the benefit of Tuchten and all similarly situated creditors. Marano's counsel was present at the preliminary injunction hearing on September 19, 2008.

On February 24, 2009, I granted a motion by Tuchten for order to show cause why Marano should not be held in civil contempt for allegedly violating the terms of the preliminary injunction order I entered on September 19, 2008 when it accepted a check from Defendant MS-Grand in the amount of $17,300 on September 20, 2008. Marano subsequently moved to strike and/or vacate that order due to improper notice. Tuchten opposed Marano's motion to strike and vacate the order to show cause, claiming that in addition to receiving the $17,300, Marano also entered into credit transactions for the sale of produce to MS-Grand on September 20 and 21, 2008, and received payment of $16,500 in cash for those transactions on September 28, 2008. On March 10, 2009, I denied Marano's motion to strike and vacate the order to show cause and ordered Marano to show cause why an order for civil contempt should not be issued against it for violating the terms of the preliminary injunction.

Tuchten contends that the $33,800 in funds paid to Marano after the entry of the preliminary injunction order are MS-Grand trust assets that should be disgorged for pro rata disbursement to all qualified PACA trust beneficiaries of MS-Grand, including Marano, to the extent it is determined to have a valid PACA trust claim. Marano responds that the relief Tuchten seeks is inappropriate for the following reasons: (1) the two payments to Marano were solely the proceeds of produce purchased from Marano pursuant to an agreement; (2) Tuchten was not damaged by Marano's sales of produce to Defendants; (3) since Tuchten was not

damaged, a monetary award is not proper; and (4) any claim of damage should not exceed the pro-rata share of creditors excluding Marano.

**II. Discussion**

A court may hold a party in civil contempt when clear and convincing evidence is presented that: (1) a valid court order existed; (2) the party had knowledge of the order; and (3) the party violated the order. *Fed. Trade Comm'n v. Trudeau*, 567 F. Supp. 2d 1016, 1020 (N.D. Ill. 2007) (citing *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989)). When the order at issue is an injunction, "[a]ll that is required . . . is for the language of the injunction to be as specific as possible under the totality of the circumstances, such that a reasonable person could understand what conduct is proscribed." *Fed. Trade Comm'n v. Cleverlink Trading Ltd.*, 519 F. Supp. 2d 784, 798 (N.D. Ill. 2007) (citations omitted). Parties to an action and the parties' officers, agents, employees, and attorneys, as well as non-parties who are in active concert or participation with a party are bound by an injunction and may be held in contempt for violating its terms. *See* Fed. R. Civ. P. 65(d).

Marano claims that Tuchten misstates the nature of the September 9, 2008 agreement by contending that the agreement was limited to "cash on delivery" orders. However, a review of the transcript of the September 9, 2008 hearing clearly establishes that the agreement allowing for the purchase of new grocery stock was limited to cash on delivery sales. In response to my inquiry about new grocery stock, MS-Grand's counsel specifically stated, "That's what I'm saying. C.O.D." Later that day, Tuchten's counsel sent a letter to MS-Grand's counsel summarizing the agreement that was reached on the record in court. That letter did not include the specific "cash on delivery" requirement. However, the letter was merely a summary of the

proceedings and, in any event, the record made in court is what I approved and is what governs now. As I said at the September 9, 2008 hearing, "[MS-Grand's counsel] said it in open court on the records and he's bound by it." In addition, MS-Grand's counsel responded to the letter from Tuchten's counsel and reiterated, "I believe the essence of the agreement was the Defendants would not pay any existing creditors, would pay their employees, and would continue to maintain their business on a **C.O.D. basis.** . . . Again, our agreement was made in open court and I believe the record speaks for itself." (emphasis added).

The $17,300 worth of produce at issue was picked up by MS-Grand on September 16, 2008 and paid for by cashier's check on September 20, 2008. The $16,500 worth of produce at issue was picked up by MS-Grand on September 20 and 21, 2008 and paid for on September 28, 2008. Neither transaction was cash *on delivery*, and thus both were in violation of the September 9, 2008 agreement reached by counsel in open court. Furthermore, both payments were made after the entry of the September 19, 2008 preliminary injunction order, which prohibited the alienation, dissipation or paying over of any assets of MS-Grand except for non-owner wages due through the time and date of the issuance of the preliminary injunction order.

With regard to the September 20, 2008 payment for produce picked up by MS-Grand on September 16, 2008, the violation of the September 9, 2008 agreement was one partly of form, rather than substance. The cashier's check is the equivalent of cash, and in that respect the payment comported with the September 9, 2008 agreement, which limited the purchase of new grocery stock to cash on delivery transactions. The problem with the payment is one of timing. The payment ought to have been submitted by MS-Grand upon the delivery of the produce; Marano too was obliged by my order to insist upon immediate payment. However, I am satisfied

5

that Marano should not be held in civil contempt for accepting the $17,300 payment on September 20, 2008. The produce delivered was in accordance with the substance of the September 9, 2008 agreement, which allowed for the purchase of new grocery stock for the MS-Grand store.

With regard to the sales for produce deliveries made on September 20 and 21, 2008 (the $16,500 at issue), Marano argues that its employees who are responsible for filling customer orders did not receive reasonable notice of the entry of the preliminary injunction which was entered at 4:48 P.M., CDT, on Friday, September 19. Marano explains that it starts selling produce between 2:00 and 4:00 A.M. and wraps up a majority of its sales by noon. According to Marano, notice of the injunction "was not fully transmitted to all of [Marano's] sales people until the next regular business day which was Monday, September 22." This argument is unpersuasive because there is no dispute that Marano's counsel was notified of the preliminary injunction order on September 19, 2008. *See* Fed. R. Civ. P. 65(d).

Additionally, Marano argues that even if it violated the terms of the agreement and/or the preliminary injunction, disgorgement is improper because the payments in issue were paid from the proceeds of the produce provided by Marano to MS-Grand. Thus, according to Marano, the payments to Marano are not traceable to the PACA trust "because the funds are traceable to produce delivered after the agreement." In support of this contention, the affidavit of MS-Grand's President, Peter Limperis, attests to the fact that the payments in issue were solely derived from the produce purchased from Marano. There are several problems with Limperis's affidavit. First, Limperis states in his affidavit that MS-Grand did not buy any produce from Marano after it received notice of the preliminary injunction, which occurred on September 19,

2008. (In fact, Limperis attended the September 19 hearing). But Limperis also states in his affidavit that the $16,500 paid to Marano on September 28, 2008 was "payment for produce purchased from [Marano] on September 20 and 21, 2008." Thus, either the first statement that MS-Grand did not buy any produce from Marano after September 19, 2008 is false, or the second statement regarding the source of the payments is false.

At bottom, the contention that the payments in issue were paid exclusively from the proceeds of the produce provided by Marano to MS-Grand is rhetoric without evidence. Despite the assumption in Marano's argument that no other produce supplier delivered produce to MS-Grand pursuant to the September 9, 2008 agreement, there is no averment that MS-Grand's inventory after September 9, 2008 consisted solely of produce, let alone Marano's produce. Neither is there an averment that proceeds from the sale of produce were segregated from non-produce inventory proceeds.

Along the same lines, Marano argues that disgorgement is improper because Tuchten has not been damaged by Marano's receipt of the $33,800 because the funds would not have been available but for Marano having supplied produce to MS-Grand. Again, there is simply no credible evidence that the funds at issue were solely sales proceeds derived from produce provided exclusively by Marano, as opposed to commingled inventory proceeds from produce and/or other products provided by MS-Grand's other suppliers.

Finally, Marano argues that Tuchten cannot seek to have more than its pro rata share of trust assets disgorged, which Marano claims is a minimal amount in comparison to its own pro rata share. Marano claims over $914,000 in this matter, while the claims made by all other parties that have appeared thus far total $23,841. The combined claims of all potential PACA

7

claimants other than Marano, including those not currently a party to this case, equal approximately $341,541. Marano argues that since it has a claim to most of the trust *res*, a disgorgement of funds now is essentially futile since at least 75% of the funds in the trust will be returned to Marano at a later date. However, the validity and amount of each creditor's claim to the trust remains to be determined. The percentage of each creditor's claim to the trust is not a valid basis upon which to condition disgorgement at this time.

## III. Conclusion

For the foregoing reasons, I find Anthony Marano Company to be in civil contempt of the September 19, 2008 preliminary injunction order for accepting a $16,500 payment from MS-Grand for sales of produce on September 20 and 21, 2008. I order Marano to disgorge $16,500, to be held in trust by Tuchten's counsel, William B. Kohn, for the benefit of all potential PACA trust creditors of MS-Grand. I further grant Tuchten leave to file an application for reasonable attorneys' fees incurred with respect to its motion for order to show cause, an amount which I expect will be modest.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: July 1, 2009