UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY MARANO COMPANY,

    Plaintiff,

    v.

MS-GRAND BRIDGEVIEW, INC., d/b/a
MELROSE FRESH MARKET, PETER
LIMPERIS, and MAKIS LIMPERIS,

    Defendants.

JACK TUCHTEN WHOLESALE
PRODUCE, INC.,

    Intervening Plaintiff,

    v.

MS-GRAND BRIDGEVIEW, INC.,
MELROSE FRESH MARKET, PETER
LIMPERIS, and MAKIS LIMPERIS,

    Defendants.

No. 08 C 4244
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anthony Marano Company ("Marano"), and Intervening Plaintiff, Jack Tuchten Wholesale Produce, Inc. ("Tuchten"), are suppliers of agricultural produce to Defendants, who owned and operated Defendant MS-Grand Bridgeview, Inc. ("MS-Grand"), doing business as Melrose Fresh Market, a grocery store in Bridgeview, Illinois. Marano commenced this action on July 25, 2008 to enforce payment from the trust established by the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). Other PACA trust creditors have also intervened asserting trust claims against Melrose Market and its principals.

The total amount of unpaid produce claims is about $1.3 million. Marano moved for entry of a temporary restraining order to prevent dissipation of trust assets, which I granted on August 14, 2008. On September 19, 2008, I entered a preliminary injunction which ordered that all banking institutions holding funds belonging to MS-Grand turn them over to Tuchten's counsel for the benefit of Tuchten and all similarly situated creditors. Pursuant to the temporary injunction, $10,720.20 was turned over to Tuchten. Accordingly, the issue of secondary liability of MS-Grand's principals for the trust debt is of paramount concern to MS-Grand's creditors. Defendant Makis Limperis, an investor and shareholder in MS-Grand, now moves for summary judgment, which both Marano and Tuchten (collectively "Plaintiffs") oppose. Plaintiffs have in the alternative moved to continue or deny Makis Limperis's motion for summary judgment pursuant to Rule 56(f) so that further discovery can be undertaken with respect to the issue of secondary liability of MS-Grand's principals under PACA. For the following reasons, Defendant's motion for summary judgment is granted.

**I. Factual Background**

On or before September 14, 2007, Defendant Makis Limperis's brother, Peter Limperis, sought to open a produce store. According to Makis, he agreed to invest $500,000 in exchange for 33% ownership in MS-Grand. Makis testified in his affidavit that he was a silent investor in MS-Grand and that his brother Peter was a corporate officer and manager. Plaintiffs contest the nature and scope of Makis's role in MS-Grand on the basis of: (1) Makis's signature on a April 2, 2008 Joint Shareholder/Director Resolution;[1] (2) lack of documentation regarding who MS-

---

[1] Makis's signature on this document does not identify him as a director. The document merely states that the signatories are "all the Shareholders and Directors" of the company. Makis acknowledges that he was a shareholder, but denies that he was ever a director of MS-Grand.

Grand's officers were from April 2, 2008 until August 20, 2008 (the same period when a majority of the produce debt is alleged to have been incurred); (3) lack of copies of a stock ledger book or stock certificates confirming Makis's 33% ownership interest; (4) lack of evidence regarding the capital contributions from MS-Grand's other investors, including Jim Limperis, Christos Bournas, Steven R. Vitogiannis ("Vitogiannis"), and Peter Limperis; (5) Vitogiannis's assertion that Makis acquired additional shares of MS-Grand making him the largest shareholder and largest investor in MS-Grand; (6) Vitogiannis's assertion that Makis participated in decisions in 2007 and 2008 appointing the authorized signatories to MS-Grand's bank accounts; (7) Makis's alleged participation at a July 30, 2008 meeting to discuss raising $1,000,000 in capital for MS-Grand; and (8) disclosures from MS-Grand and Peter Limperis.

What is undisputed about Makis's role in MS-Grand is that he was never employed by MS-Grand. He never worked as a manager, he did not purchase produce in any capacity, he never paid any of MS-Grand's bills, he was not named or included on any bank account, and he never held himself out as having the authority to manage the financial affairs. He played no role in the day-to-day management of the business nor did he hold himself out as having the authority to do so.

Defendant Makis moved for summary judgment in April 2009, arguing that he was merely a passive investor in MS-Grand and not a controlling shareholder, corporate officer or director, and therefore not subject to secondary liability under PACA. On July 1, 2009 the close of discovery was set for September 9, 2009. On July 7, 2009, Marano and Tuchten filed their response brief, in which they additionally moved to continue or deny summary judgment on the

---

This document, without more, provides no proof that Makis was ever a director of the company.

basis that further discovery is needed to respond. Makis filed his reply to his motion on July 20, 2009. MS-Grand, Peter Limperis, and Vitogiannis have since submitted discovery to Plaintiffs and the parties have filed supplemental briefing accordingly.

## II. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has set forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

Summary judgment should not be entered "until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion." *Celotex*, 477 U.S. at 326. Federal Rule of Civil Procedure 56(f) provides that if a party

4

opposing summary judgment shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may order a continuance to permit such discovery to be undertaken. Fed. R. Civ. P. 56(f); *Grayson v. O'Neill*, 308 F.3d 808, 815 (7th Cir. 2002).

## III. Discussion

"In general, individuals are not personally liable for a corporation's torts solely on the basis of their position as a corporate stockholder, officer or director." *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F. Supp. 209, 212 (E.D.N.Y. 1993). "However, an officer who causes a corporate trustee to commit a breach of trust which causes a loss to the trust is personally liable to the beneficiaries for that loss." *Id.* (citation omitted). Mere ownership of stock, on the other hand, does not give rise to individual liability. *Id.* at 213. ("(T)here are many small corporations in which an individual may own 100% of the stock and yet choose – for entirely legitimate purposes – not to exercise any day-to-day control over the company's affairs.") In *Mid-Valley*, the 100% stock owner who was never an officer, director, or employee of the company was held not individually liable for PACA debts. *Id.* at 212-13.

In the PACA context, courts have found individual liability when a person who is in a position to control PACA assets fails to preserve those assets for the trust beneficiaries. In so doing, those courts have evaluated the extent to which the individual was involved in the corporation. *See, e.g.*, *Shepard v. K.B. Fruit & Vegetable Inc.*, 868 F. Supp. 703, 706 (E.D. Pa. 1994) (Defendants not secondarily liable merely because they served as corporate officers and shareholders; instead, they must have had some role in causing the seller to commit a breach of the trust in order to be held secondarily liable); *Golman-Hayden Co., Inc. v. Fresh Source Produce,* Inc., 217 F.3d 348 (5th Cir. 2000) (same); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d

280 (9th Cir. 1997) (same); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 349-50 (S.D.N.Y. 1993) (individual defendant who was sole shareholder, controlled the day-to-day operations, and purchased goods at issue in his own name and accepted billing in his own name was held liable for PACA debt). In determining an individual's involvement in the corporation courts have looked at various factors such as whether an individual was a director (Coosemans *Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 706 (2nd Cir. 2007), had a role in causing the seller to commit a breach of trust (*K.B. Fruit & Vegetable*, 868 F. Supp. at 706), had control of the day-to-day operations (*Zimmerman*, 814 F. Supp. at 349-50), was active in the management of the company (*Sunkist Growers*, 104 F.3d at 283), signed for company accounts (*K.B. Fruit & Vegetable*, 868 F. Supp. at 706), or was the primary actor in failing to pay under PACA (*Bronia Inc. et al. v. Ho*, 873 F.Supp. 854, 861 (S.D.N.Y. 1995)).

Makis Limperis argues that he was not in a position to affect the PACA trust, and therefore he cannot be held secondarily liable for any dissipation of the trust assets. In support, he maintains that none of the factors that courts have found to warrant the imposition of personal liability are present in his case: Makis Limperis was a minority shareholder in MS-Grand; he was not an officer or director; he did not exercise any control over the business; he was not a signatory on any company accounts; he did not order or accept any produce; he did not pay corporate debts; he neither borrowed money for the corporation nor received money from the corporation. In short, Makis Limperis argues that he was a silent investor.

Plaintiffs argue that there is a genuine dispute regarding Makis Limperis's role in MS-Grand, the amount of Makis Limperis's ownership interest in MS-Grand, and whether Makis Limperis did have authority to manage operations and financial affairs of MS-Grand. Plaintiffs

6

assert that these disputes are sufficient to suggest that Makis was in a position to affect the PACA trust and thus prevent summary judgment.

First, Plaintiffs contend that Makis's signature on a April 2, 2008 Joint Shareholder/Director Resolution shows that Makis is not simply a minority shareholder, but is also a director of MS-Grand. As noted *supra*, Makis's signature on this document does not identify him as a director. The document merely states that the signatories are "all the Shareholders and Directors" of the company. This is not inconsistent with Makis's position that he was merely an investor Without more, this document provides no proof that Makis was ever a director of the company.

Next, Plaintiffs turn to the capitalization of MS-Grand. Plaintiffs state that Makis's contribution of $500,000 "belies the notion" the Makis was a minority shareholder with no ability to manage or control the corporation because of the comparatively small contributions made by Jim Limperis, Christos Bournas, Steven R. Vitogiannis and Peter Limperis.[2] Although Makis has claimed to be a 33% shareholder, Vitogiannis stated that Makis acquired additional shares of MS-Grand making him both the largest shareholder and investor in the company.[3] Although it is true that there is a dispute as to this fact, Makis's share of MS-Grand is not material to this motion. It is not the ownership of stock that gives rise to liability, *Mid-Valley* 819 F.Supp. at 213, but the level Makis was involved in the corporation which will determine

---

[2] Jim Limperis and Christos Bournas allegedly contributed an aggregate of $334.00 (and may have assumed a $400,000 debt allegedly owed to prior shareholders). Steven R. Vitogiannis and Peter Limperis allegedly contributed $0.00, and instead contributed personal time and expertise to MS-Grand.

[3] Makis asserts that this fact is contradicted by other documents produced in Vitogiannis's document production.

7

whether Makis was in control of PACA assets and failed to preserve those assets for the trust beneficiaries. *See, e.g.*, *Shepard v. K.B. Fruit & Vegetable Inc.*, 868 F. Supp. 703, 706 (E.D. Pa. 1994).

Plaintiffs point to three statements obtained from Vitogiannis to rebut Makis's assertion that he did not have the authority to manage any operations or financial affairs, and was not involved in its day-to-day operations. First, Vitogiannis states that in October 2007 and April 2008, Makis participated in two decisions to give Vitogiannis and Constantine Falakos, and Vitogiannis and Peter Limperis respectively, authority to sign checks on behalf of MS-Grand. Second, Plaintiffs point to Vitogiannis's statement that Makis participated in a meeting on July 30, 2008 to discuss raising $1,00,000 in capital for MS-Grand, voted that Vitogiannis was to provide capital to MS-Grand, and then escorted Vitogiannis off the property. Plaintiffs argue that given Makis's participation, he was fully aware of MS-Grand's financial problems by the end of July 2008, yet allowed MS-Grand to continue to operate thereafter incurring an additional $66,000 in PACA trust debt. Accordingly, Plaintiffs assert that Makis actively participated in deciding who would be in positions of control over MS-Grand's sales proceeds, bank accounts and operations. Third, Plaintiffs point to MS-Grand's and Peter Limperis's Rule 26(a) initial disclosures which state that Makis has knowledge "of the corporation, its operations and assets, produce ordered, shipments made, credit terms, payments made, product spoilage, etc." Plaintiffs assert that this directly contradicts Makis's claim that he is merely a passive investor.

Regarding the assignment of authority to sign checks, Makis denies playing any role in this decision-making process. Additionally, Makis disputes the statements by Vitogiannis regarding the July 2008 meeting. Makis claims that this meeting was to inform shareholders,

8

including Makis, of the poor financial status of the company and attempt to raise money to save the business. Makis argues that even if Makis did participate in the meeting, it would not establish that he was directing the use of PACA funds. His reasoning is that personal liability under PACA is premised on the idea that the person misused or misappropriated produce or money derived from produce sales. Here, Makis would be trying to *raise* money to rescue the business and pay creditors. Furthermore, Makis asserts that Plaintiffs' reliance on disclosures is misplaced because the Rule 26(a) disclosures ask for the name of each individual "*likely to have discoverable information*" whereby Peter Limperis listed the names of each shareholder (including Makis) followed by the exact same boilerplate language after each name.

Plaintiffs concede that there is no evidence that Makis ran the day-to-day operations of MS-Grand, ordered any produce, paid any of MS-Grand's bills, or conducted any oversight of MS-Grand's financial operations. Still, Plaintiffs assert that there is a genuine issue of material fact regarding whether or not Makis was in a position to exercise control over PACA trust assets.

I do not find that there is a genuine issue as to Makis's position in the company. Even acknowledging the disputes raised by Plaintiffs, the balance of undisputed factors persuades me that no reasonable trier of fact could find that Makis was in a position to affect the PACA trust. I do not find that the MS-Grand and Peter Limperis disclosure creates an issue regarding Makis's position in the company. The statement is boilerplate language applied to each shareholder, and without more, does not create a dispute of material fact. Furthermore, even if Plaintiff did participate in the decisions regarding the authority to sign checks and attend the meeting discussing the financial status of MS-Grand, these two instances alone do not overcome the overwhelming evidence that Makis was merely a passive shareholder.

## IV. CONCLUSION

For the foregoing reasons, I deny Plaintiff's request to continue this motion[4] and grant Defendant Makis's motion for summary judgment.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: December 11, 2009

---

[4] I find the discovery that has been taken since the initial filing of this motion, in addition to the supplemental briefing, to be sufficient for purposes of this motion.