UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY MARANO COMPANY,<br><br> Plaintiff,<br><br>  v.<br><br>MS-GRAND BRIDGEVIEW, INC., an Illinois corporation, d/b/a MELROSE FRESH MARKET, PETER LIMPERIS, and MAKIS LIMPERIS,<br><br> Defendants.<br>_____<br><br>JACK TUCHTEN WHOLESALE PRODUCE, INC., AUSTER ACQUISITIONS, LLC a/t/a THE AUSTER COMPANY, INC., JAB PRODUCE INC., COOSEMANS CHICAGO, INC., and MICHAEL J. NAVILIO & SON, INC.<br><br> Intervening Plaintiff,<br><br>  v.<br><br>MS-GRAND BRIDGEVIEW, INC., an Illinois corporation, d/b/a MELROSE FRESH MARKET, PETER LIMPERIS, and MAKIS LIMPERIS,<br><br> Defendants. | No. 08 C 4244<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This is an enforcement action to recover trust assets under the Perishable Agricultural Commodities Act. I granted Plaintiff's and Intervening Plaintiffs' motions for summary

judgment, and they now move for an award of attorneys' fees and costs. For the following reasons Plaintiff's and Intervening Plaintiffs' motions for fees are granted in part.

**I. STATEMENT OF FACTS**

This case arose out of Plaintiff's and Intervening Plaintiffs' enforcement action to recover trust assets under the Perishable Agricultural Commodities Act, 7 U.S.C. 499e(c ) ("PACA"). Plaintiff Marano asserted a PACA trust claim of approximately $960,000.00 against Defendants MS-Grand Bridgeview, Inc. ("MS-Grand), Peter Limperis ("Limperis")[1], and Mike Limperis, and obtained a Temporary Restraining Order to prevent dissipation of trust assets. Intervening Plaintiffs sought to enforce their claims for unpaid produce sold to MS-Grand in the following amounts: $28,141.50 (Tuchten), $125,484.00 (Auster), and $20,014.85 (Navilio). Vitogiannis was a 33% shareholder of MS-Grand. A Preliminary Injunction Order was granted on September 19, 2008. I later found Marano to be in civil contempt of my September 19, 2008 preliminary injunction order for accepting a $16,500 payment from MS-Grand for sales of produce on September 20 and 21, 2008. Marano was ordered to disgorge $16,500, and I further granted Tuchten reasonable attorneys' fees incurred with respect to its motion for order to show cause. Additionally, I granted Tuchten's motion to compel production of certain documents during discovery. On December 23, 2010, I granted Intervening Plaintiff's and Intervening Plaintiffs' motions for summary judgment as to MS-Grand Bridgeview, Inc. and Peter Limperis, and Efstravius Vitogiannis a/k/a Steven R. Vitogiannis ("Vitogiannis").

---

[1] MS-Grand and Limperis will be referred to collectively as "MS-Grand Defendants."

## II. STANDARD OF REVIEW

PACA law does not provide for attorneys' fees, but courts have upheld awards of reasonable attorneys' fees and costs to PACA litigants when a provision for attorneys' fees and costs is listed on the invoice. *See Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666 (7th Cir. 2002). The court should deny fees where they are excessive, redundant, or otherwise unnecessary. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550-52 (7th Cir. 1999).

## III. DISCUSSION

### A. Plaintiff Marano's Motion For Attorneys' Fees and Costs.

Plaintiff Marano moves for attorneys' fees and costs in the amount of $24,275.00. Defendant MS-Grand objects to the award of fees on two grounds. First, MS-Grand Defendants object to the award of $8,425.00 in attorneys' fees for work completed in connection with Defendants' allegations of contempt for which Plaintiff was found guilty. Second, Defendants argue that Marano's billing is imprecise, not sufficiently specific, and excessive.

In September 2008, intervening Tuchten Plaintiffs filed a Motion for Rule to Show Cause against Plaintiff Marano for violating the court's preliminary injunction order. I granted the motion, found Marano in contempt and ordered it to disgorge $16,500. I also granted counsel for Tuchten Plaintiffs leave to file a petition for fees in bringing their motion and then granted their request for fees in the amount of $5,509.83. I agree that Plaintiff is not entitled to recover fees related to the Motion for Rule to Show Cause, brought on behalf of intervening Plaintiffs. Accordingly, I deny Plaintiff's request for fees related to that motion which amounts to 33.7 hours.

Next, Defendants argue that Marano's billing is imprecise, not sufficiently specific, and patently excessive. One example of unreasonableness is that Marano's attorney billed 6.9 hours drafting a reply brief when only 3 hours was spent on the original motion. I disagree and do not find this to be an unreasonable entry. Defendant also complains that grouping multiple tasks under a single time entry makes it impossible to determine whether time spent on each task was reasonable or not. One example is the time entry on July 24, 2008 where the tasks listed reads: "discuss case w/ client, begin drafting Complaint, Motion for TRO, summons Memorandum supporting TRO, etc." The time spent on this list of tasks was 3 hours. Defendant objects to the fact that there is no breakdown as to the time spent on each task, as well as the fact that "etc." is used. Though I agree that articulating the exact amount of time spent on each task would be helpful, I find that the entries indicate a sufficient level of specificity, and I do not find the time entries unreasonable. Accordingly, I grant Marano's motion for attorneys' fees and costs with the aforementioned reduction of 33.7 hours in time billed.

B. Intervening Plaintiffs' Motion For Attorneys' Fees.

Intervening Plaintiffs seek $76,459.27 for over 240 hours of work in this case. Intervening Plaintiffs' counsel pro-rates its fees and costs in cases involving multiple clients based upon the principal amount of each client's trust claim. The breakdown of fees and costs incurred resulted in billing Tuchen at 16.34%, Auster at 72.15%, and Navilio at 11.51%. Specifically, Tuchen seeks $21,345.63 against MS-Grand Defendants and Vitogiannis, Auster seeks $47,974.43 against MS-Grand Defendants and Vitogiannis, and Navilio seeks $7,139.21 against MS-Grand Defendants. The language on the invoices of Tuchen, Auster, and Navilio all indicate that the Buyer (MS-Grand) would pay attorneys' fees and costs in the event of legal

4

action.  The fees and costs sought "include credits for the pro-rated portion of fees and costs involving disputes with Marano, Makis Limperis, dismissed defendants, and Navillo's fees regarding its claim – ultimately withdrawn– against Vitogiannis."  In aggregate, Intervening Plaintiffs seek $76,459.27 for over 240 hours of work in this case.

MS-Grand Defendants and Vitogiannis dispute the award of attorneys' fees and costs on several grounds and ask that such fees be denied or reduced.  Defendant Vitogiannis joins in MS-Grand Defendants' opposition to the award of attorneys' fees and costs, and also raises additional objections to Plaintiffs' motion.  As an initial matter, Intervening Plaintiffs concur that it is inequitable to assess Defendant Vitogiannis with attorneys' fees and costs incurred in dealing with MS-Grand and Limperis' opposition to the preliminary injunction and failure to abide by it in September and October 2008.  Accordingly, I reduce Plaintiff Tuchten's fee award as to Vitogiannis by $2,518.15.

Defendants argue that Intervening Plaintiffs' fees are unreasonable because the legal issues were not complicated and the facts were largely uncontested.   In essence, Defendants argue that Plaintiffs have failed to meet their burden of proving the reasonableness of their fees.  I disagree.  Despite Defendants' assertions, this was not a simple matter.  This case involved multiple defendants, the assertion of cross-claims, cross-motions for summary judgment and a violation of the court's Preliminary Judgment Order.  Similarly, I do not agree with Defendants' assertion that this matter was not 'hotly' contested.  Defendants denied all liability under the PACA trust and asserted Affirmative Defenses.  As to Vitogiannis, he also denied failing to pay Intervening Plaintiffs, failing to maintain sufficient trust assets, and the allegation that he had dissipated trust assets.  All Defendants vigorously defended themselves against Intervening

Plaintiffs' claims. Moreover, while Intervening Plaintiffs' counsel does possess expertise in matters related to PACA trust claims, I do not agree with Defendants' characterization of this case as "little more than routine work for Plaintiffs' counsel which had encountered all these facts and arguments in prior cases."

Defendants point to the disparity between the hours billed and fees sought by Plaintiff Marano and those sought by Intervening Plaintiffs to indicate that the fees sought by Intervening Plaintiffs are unreasonable. The comparison, however, is inappropriate. Marano did not seek a preliminary injunction order, nor did he bring suit against Defendant Vitogiannis. Likewise, Marano moved for summary judgment by incorporating Intervening Plaintiffs' pleadings. Furthermore, because Marano did not file suit against Defendant Vitogiannis, it was not necessary for him to respond to the cross-motion for summary judgment, statement of material facts, or motion to strike filed by Vitogiannis.

Vitogiannis argues that he should not be assessed with fees or costs incurred prior to his being formally added as a defendant in this action on May 9, 2009. I disagree. I found that Defendant Vitogiannis dissipated trust assets and that MS-Grand owed over $1,000,000.00 in trust debt when he involuntarily departed MS-Grand on July 30, 2008. The fact that Vitogiannis was not served until May 9, 2009 has no impact on his culpability, or my finding of liability.

Next, Vitogiannis argues that Intervening Plaintiff Auster's fee request should be reduced by 29.33% because Auster 'lost' 29.33% of its case by voluntarily reducing its damages sought on summary judgment. In support, Defendant cites *Bethune Plaza, Inc. v. Lumpkin*, 755 F.Supp. 223, 227 (N.D. Ill. 1991). There, the Plaintiff brought both federal and state law claims, and succeeded only on its federal law claims. Accordingly, the court reduced the award of attorneys'

fees to ensure that the Plaintiff was not awarded fees for unsuccessful claims. The case at hand, however, is distinguishable. Here, no specific claims were lost. Rather, Plaintiff voluntarily reduced the damages sought in accordance with the evidence established in discovery. The reduction of damages did not reflect wasted or unsuccessful efforts on the part of Intervening Plaintiffs' attorneys, but rather a more accurate reflection of damages. Accordingly, I reject Defendants' argument.

Finally, Vitogiannis argues that Intervening Plaintiffs' attorneys' fees should be reduced because comparatively, they seek fees and costs equal to 59% of the total amount recovered from Vitogiannis, whereas the fees and costs sought from Marano amount to 3% of the amount recovered. Vitogiannis cites no support for this equitable argument. As noted by Intervening Plaintiffs, no fees would have been incurred had Defendant Vitogiannis "exercised his fiduciary duties and maintained sufficient assets to pay the beneficiaries."

Intervening Plaintiffs' motion for attorneys' fees and costs is granted in part.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's and Intervening Plaintiffs' motions for attorneys' fees and costs are granted in part.

ENTER:

James B. Zagel
United States District Judge

DATE: July 6, 2011